**THE UNITED STATES DISTRICT COURT**
**DISTRICT OF EASTERN NEW YORK**

| | |
|---|---|
| ANTHONY JONES, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br> v. <br><br> CONNECTONCALL.COM LLC, <br><br> Defendant. | Case No.: 2:24-cv-08776 <br><br><br> **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Anthony Jones, individually and on behalf of all others similarly situated, by and through undersigned counsel, alleges, upon personal knowledge as to his own acts and experiences and, where indicated, upon information and good faith belief, against ConnectOnCall.com, LLC ("ConnectOnCall" or "Defendant") the following:

**NATURE OF THE ACTION**

1.    Plaintiff brings this class action lawsuit on behalf of a class of similarly situated persons against ConnectOnCall for its failure to adequately safeguard, monitor, maintain and protect highly sensitive personal health information ("PHI") and personally identifiable information ("PII") (collectively, "Sensitive Information") of patients of healthcare providers who used Defendant's services.

2.    Defendant offers a product that healthcare providers purchase to improve their after-hours call process and enhance communications between providers and their patients, operating in multiple states.

3.    On or about May 12, 2024, ConnectOnCall detected suspicious activity within its network environment, which was later confirmed to be an unauthorized network intrusion that

1

resulted in threat actors gaining access to confidential files containing Sensitive Information (the "Data Breach"). The investigation revealed that between February 16, 2024 and May 12, 2024, an unknown third-party gained access to Defendant's IT Network and accessed certain data including provider-patient communications.

4.       According to ConnectOnCall's report filed with the U.S. Department of Health and Human Services Office for Civil Rights on December 11, 2024, cybercriminals compromised the Sensitive Information of approximately 914,138 individuals.

5.       The Sensitive Information compromised in the Data Breach included names, phone numbers, medical record numbers, dates of birth, information related to health conditions, treatments or prescriptions, and Social Security numbers.

6.       Despite discovering the suspicious activity on May 12, 2024, ConnectOnCall did not begin notifying affected individuals until December 11, 2024, or approximately *seven months* after the initial detection of the Data Breach.

7.       Furthermore, despite the significant scope of the Data Breach, Defendant's Notice and individual notifications provided extremely limited details about the breach, including specific types of information compromised, when the Data Breach occurred and its duration, the identity of the cybercriminals who perpetrated the intrusion, and whether ConnectOnCall clients' patients' Sensitive Information is still in the hands of criminals.

8.       ConnectOnCall's avoidable and inexcusable delay in notifying the victims of the Data Breach exacerbated the already heightened risk of identity theft and fraud created by Defendant's lax data and network security and prevented those affected from taking timely steps to secure their data.

9.       The type of highly sensitive information impacted by the Data Breach can be used

2

to orchestrate a wide range of fraudulent activities, including but not limited to medical insurance fraud, financial fraud, and identity theft.

10.     As a result of Defendant's actions and inactions, Plaintiff and Class Members have been forced to undertake time-consuming and costly efforts to mitigate the actual and potential harm caused by the Data Breach's exposure of their Sensitive Information, including placing freezes and alerts with credit reporting agencies, contacting their financial institutions and health insurance providers, closing or modifying financial accounts, and monitoring their credit reports and accounts for unauthorized activity.

11.     Plaintiff and Class Members were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

12.     Plaintiff seeks to recover damages, equitable relief, attorneys' fees, costs, and expenses on behalf of himself and all similarly situated persons whose Sensitive Information was compromised as a result of Defendant's inadequate security practices and the Data Breach that occurred because of Defendant's actions.

13.     As such, Plaintiff and Class Members bring this action to recover for the harm they suffered and assert the following claims: (i) Negligence, (ii) Negligence *per se*, (iii) Invasion of Privacy, (iv) Breach of Implied Contract, (v) Unjust Enrichment; (vi) Breach of Fiduciary Duty; (vii) Breach of Third-Party Beneficiary Contract, and (viii) Bailment.

## PARTIES

14.     Plaintiff Anthony Jones is a natural person and citizen of Arizona residing in Sun City, Arizona.

15.     Defendant ConnectOnCall LLC, a limited liability company organized under the laws of the State of New York, with its principal place of business at 200 Motor Parkway, Hauppauge, New York.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs. The number of Class Members is approximately 914,138, many of whom – including Plaintiff – have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. §1332(d)(2)(A).

17.     This Court has personal jurisdiction over this action under 28 U.S.C. § 1391(b) and 28 U.S.C. §112(c) because Defendant is incorporated in the State of New York, maintains its principal place of business in Hauppauge, New York, and conducts substantial business in this judicial district.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Defendant is incorporated in the State of New York, Defendant's principal place of business is located in this District and a substantial part of the events and omissions giving rise to this action occurred in this District.

## COMMON FACTUAL ALLEGATIONS

### A. Defendant Collected, Maintained and Stored Sensitive Information.

19.     Defendant is a telehealth platform and after-hours on-call answering service with automated patient call tracking for healthcare providers.[1]

---

[1] *See Notice of Data Breach,* https://oag.ca.gov/system/files/Sample%20Notice%20Letter_3.pdf (last visited Dec. 20, 2024); *see also AboutUs*, Phreesia https://www.phreesia.com/company/about-us/ (last visited December 20, 2024).

20.    Through its provision of these communication services, ConnectOnCall receives, processes, maintains and stores large volumes of sensitive personal, medical, and financial information from its clients' patients.[2]

21.    When healthcare providers' patients communicate with their providers using ConnectOnCall's services, their Sensitive Information, including but not limited to names, phone numbers, medical record numbers, dates of birth, information related to health conditions, treatments, and prescriptions, is collected and stored by Defendant as part of facilitating these provider-patient communications.

22.    Patients are required to provide this information to healthcare providers as a condition of receiving healthcare services.

23.    By collecting and storing this information in connection with providing its services, ConnectOnCall assumes a duty to securely maintain and protect the Sensitive Information of its healthcare provider clients' patients.

24.    The PHI and PII that Defendant maintains is highly sensitive and valuable, making ConnectOnCall a particularly attractive target for cybercriminals seeking to obtain and misuse or sell patient data.

25.    ConnectOnCall acknowledges on its own website and in communications with clients' patients that "we understand the importance of safeguarding individual personal information."[3]

---

[2] *About Us,* https://www.phreesia.com/about-us (last visited Dec. 20, 2024).

[3] *Notice of Data Breach*, *supra*, n. 1.

26.     Plaintiff and Class Members relied on ConnectOnCall to implement and maintain reasonable and adequate security measures to keep their Sensitive Information secure and protected from unauthorized access.

**B.  ConnectOnCall's Data Breach Exposed Patients' Sensitive Information.**

27.     Defendant derives a substantial economic benefit from providing healthcare communication services to its clients, and as a part of providing that service, Defendant retains and stores Plaintiff's and Class Members' Sensitive Information.

28.     By obtaining, collecting, and storing the Sensitive Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known it was responsible for protecting the Sensitive Information from disclosure.

29.     Upon information and belief, Defendant made promises to Plaintiff and Class Members to maintain and protect Plaintiff's and Class Members' Sensitive Information, demonstrating an understanding of the importance of securing Sensitive Information.

30.     On or about December 11, 2024, Defendant announced that an unauthorized third party had gained access to certain files on its system. According to Defendant's investigation, between February 16, 2024 and May 12, 2024, an unknown third-party gained access to ConnectOnCall's IT Network and accessed certain data including provider-patient communications. The Notice of Data Breach states:

> **What Happened?**
>
> On May 12, 2024, we learned of an issue impacting ConnectOnCall. As soon as we learned of the incident, we immediately began an investigation and took steps to secure the product and ensure the overall security of our environment. Our investigation revealed that between February 16, 2024, and May 12, 2024, an unknown third party had access to ConnectOnCall and certain data within the application, including certain information in provider-patient communications.

**What Information Was Involved?**

You are receiving this notice because you or your family member,
health advocate, or healthcare provider provided your information in a patient-
provider message using ConnectOnCall.

We have determined that the personal information involved in this incident
may have included your name, phone number, date of birth, and information
related to your health conditions, treatment, or prescriptions.[4]

31.     Defendant further states that "You should always remain vigilant for incidents of

fraud and identity theft, including by regularly reviewing your account statements and monitoring

credit reports. If you discover any suspicious or unusual activity on your accounts or suspect

identity theft or fraud, be sure to report it immediately to your financial institutions."[5]

32.     Defendant could have prevented this Data Breach by properly securing and

encrypting the files and file servers containing the Sensitive Information of Plaintiff and Class

Members.

33.     Defendant did not use reasonable security procedures and practices appropriate to

the nature of the sensitive information it was maintaining for Plaintiff and Class Members, causing

the exposure of Sensitive Information, such as encrypting the information or deleting it when it is

no longer needed.

34.     As a result, criminal actors accessed and stolen files containing unencrypted

Sensitive Information of Plaintiff and Class Members.

35.     Despite this, Defendant waited seven months after discovering the Data Breach to

begin notifying its victims that their Sensitive Information is in the hands of criminals.

---

[4] *See* Plaintiff's Notice, attached hereto as Exhibit A.

[5] *See id*.

7

36.     Defendant's Notice is also legally inadequate as it does not provide any information regarding the cybercriminals behind the Data Breach, the timing and duration of the Data Breach, or what specific steps Defendant has taken to prevent such incidents in the future.[6]

37.     Remarkably, Defendant put the burden on Plaintiff and Class Members to take measures to protect themselves, advising that "Individuals should remain vigilant for incidents of identity theft or fraud by reviewing bank account and other financial statements, as well as credit reports, for suspicious activity."[7]

**C.  ConnectOnCall Knew or Should Have Known of the Risk Because It Is an Institution in Possession of Sensitive Information.**

38.     Given that Defendant was storing the Sensitive Information of Plaintiff and Class Members and knew or should have known of the serious risk and harm caused by a data breach, Defendant was obligated to implement reasonable measures to prevent and detect cyber-attacks, such as those recommended by the Federal Trade Commission (the "FTC"), required by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and promoted by data security experts and other agencies.

39.     That obligation stems from the foreseeable risk of a data breach given that Defendant collected, stored, and had access to a swath of highly sensitive patient records and data and, additionally, because other highly publicized data breaches at numerous healthcare institutions put Defendant on notice that the personal and sensitive data it stores might be targeted by cybercriminals.

---

[6] *Notice of Data Breach*, *supra*, n.1.

[7] *Id.*

40.     Indeed, cyberattacks on medical systems and healthcare companies like Defendant have become so notorious that the Federal Bureau of Investigation and United States Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive … because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[8]

41.     In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in recent years.[9]

42.     Therefore, the increase in such attacks, and the attendant risk of future attacks, was widely known to the public and therefore to anyone in Defendant's industry, including Defendant.

43.     Despite the abundance and availability of information regarding cybersecurity best practices for the healthcare industry and the prevalence of healthcare data breaches, Defendant inexplicably failed to adopt sufficient data security process by, without limitation:

  a.   Failing to properly select its information security partners;

  b.   Failing to ensure the proper monitoring and logging of the ingress and egress of network traffic;

  c.   Failing to ensure the proper monitoring and logging of file access and modifications;

  d.   Failing to ensure the proper training its and its technology partners' employees as to cybersecurity best practices;

  e.   Failing to ensure fair, reasonable, or adequate computer systems and data security practices to safeguard the PII and PHI of Plaintiff and Class Members;

---

[8] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomeware,* Law360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomeware.

[9] *See* Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack,* Security Magazine (Nov. 23, 2020),    https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack.

  f. Failure to timely and accurately that Plaintiff's and Class Members' PII and PHI had been improperly acquired or accessed;

  g. Knowingly disregarding standard information security principles, despite obvious risks, by allowing unmonitored and unrestricted access to unsecured PII and PHI; and

  h. Failing to provide adequate supervision and oversight of the PII and PHI with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PII and PHI of Plaintiff and Class Members, misuse the PHI/PII and potentially disclose it to others without consent.

44. Upon information and belief, Defendant further failed to ensure the proper implementation of sufficient processes to quickly detect and respond to data security incidents, to ensure the proper encryption of Plaintiff's and Class Members' Sensitive Information, and to monitor user behavior and activity to identify possible threats.

45. Time is of the essence when highly sensitive PII and PHI is subject to unauthorized access and/or acquisition.

46. The disclosed, accessed, and/or acquired PII and PHI of Plaintiff and Class Members is, upon information and good faith belief, already available on the Dark Web.

47. Hackers can access and then offer for sale the unencrypted, unredacted PII and PHI to criminals.

48. Plaintiff and Class Members are now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from the publication of their PHI and PII onto the Dark Web.

49. Plaintiff and Class Members now face a lifetime risk of identity theft, which is heightened here by unauthorized access, disclosure, and/or activity by cybercriminals on computer systems containing sensitive personal information.

50.    Despite the highly sensitive nature of the information that Defendant obtained, maintained, and stored and the prevalence of healthcare data breaches, Defendant inexplicably failed to take appropriate steps to safeguard the Sensitive Information of Plaintiff and Class Members from being compromised.

51.    The Data Breach itself, and information Defendant has disclosed about the breach to date, including its length, the need to remediate Defendant's cybersecurity, the number of people impacted, and the sensitive nature of the impacted data collectively demonstrate Defendant failed to implement reasonable measures to prevent cyber-attacks and exposure of the Sensitive Information it oversaw.

**C. Defendant Failed to Comply with FTC Guidelines.**

52.    The FTC recognizes that consumer data is a lucrative (and valuable) form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour underscored this point by reiterating that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."[10]

53.    The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

54.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for business.

---

[10] Pamela Jones Harbour, *Remarks Before FTC Exploring Privacy Roundtable* (Dec. 7, 2009), https://www.ftc.gov/news-events/news/speeches/remarks-ftc-exploring-privacy-roundtable.

55.     Those guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[11]

56.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[12]

57.     The FTC has also issued, and regularly updates, guidelines for businesses to implement reasonable data security practices and incorporate security into all areas of the business.

58.     According to the FTC, reasonable data security protocols require:

    a.  Encrypting the information stored on computer networks;

    b.  Retaining payment card information only as long as necessary;

    c.  Properly disposing of personal information that is no longer needed or can be disposed pursuant to relevant state and federal laws;

    d.  Limiting administrative access to business systems

    e.  Using industry unapproved activity;

    f.  Monitoring activity on networks to uncover unapproved activity;

    g.  Verifying that privacy and security features function properly;

    h.  Testing for common vulnerabilities; and

---

[11] *Protecting Personal Information: A Guide for Business* (2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited Nov. 27, 2024).
[12] *Start with Security: A Guide for Business* (2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

    i. Updating and patching third-party software.[13]

59. The FTC cautions businesses that failure to protect Sensitive Information and the resulting data breaches can destroy consumers' finances, credit history, and reputations, and can take time, money, and patience to resolve the effect.[14] Indeed, the FTC treats the failure to implement reasonable and adequate data security measures-like Defendant failed to do here-as an unfair act prohibited by Section 5(a) of the FTC Act.

60. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act of practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.

61. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

62. These FTC enforcement actions include actions against healthcare providers and partners like Defendant.

63. Defendant failed to properly implement basic data security practices.

64. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customer's Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

65. On information and good faith belief Plaintiff alleges that Defendant was at all times fully aware of the obligation to protect the Sensitive Information of its clients' patients.

---

[13] *Id.*
[14] *See Taking Charge, What to Do if Your Identity is Stolen*, at 3 (Jan. 2012), https://www.ojp.gov/ncjrs/virtual-library/abstracts/taking-charge-what-do-if-your-identity-stolen.

Defendant was also aware of the significant repercussions that would result from its failure to do so.

**D. Defendant Failed to Comply with Industry Standards.**

66.     As shown above, experts studying cybersecurity routinely identify healthcare providers as being particularly vulnerable to cyberattacks because of the value of the Sensitive Information which they collect and maintain.

67.     Several best practices have been identified that at a minimum should be implemented by healthcare providers like Defendant, including but not limited to educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and ant-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limited which employees can access sensitive data.

68.     The United States Government and the United States Cybersecurity & Infrastructure Agency recommend several similar and supplemental measures to prevent and detect cyberattacks, including, but not limited to: implement an awareness and training program, enabling strong spam filters, scanning incoming and outgoing emails, configuring firewalls, automating anti-virus and anti-malware programs, managing privileged accounts, configuring access controls, disabling remote desktop protocol, and updating and patching computers.

69.     Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

70.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1[15] (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet's Critical Security Controls[16] (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

71.     The FBI's Internet Crime Complaint (IC3) 2019 estimated that there was more than $3.5 billion in losses to individual and business victims due to identity fraud in that year alone. That same report identified "rapid reporting" as a tool to help law enforcement stop fraudulent transactions and mitigate losses.

72.     These foregoing frameworks are existing and applicable industry standards in the healthcare industry, and Defendant failed to comply with these accepted standards, thereby opening the door to the cyber incident and causing the Data Breach.

**E. Defendant's Conduct and Insufficient Data Security Violate HIPAA.**

73.     The Health Insurance Portability and Accountability Act of 1996 requires covered entities to protect against reasonably anticipated threats to the security of sensitive patient health information.

---

[15] Nat'l Inst. of Standards & Tech., *Framework for Improving Critical Infrastructure Cybersecurity*(2018), https://nvlpubs.nist.gov/nistpubs/cswp/nist.cswp.04162018.pdf.

[16] *See The 18 CIS Critical Security Controls*, https://www.cisecurity.org/controls/cis-controls-list.

74.     Covered entities must implement safeguards to ensure the confidentiality and availability of PII and PHI. Safeguards must include physical, technical, and administrative components.[17]

75.     Title II of HIPAA contains what are known as the Administrative Simplification provisions.[18] These provisions require, among other things, that the Department of Health and Human Services ("DHHS") creates rule to streamline the standards for handling PII and PHI, like the data Defendant left unguarded.

76.     DHHS subsequently promulgated multiple regulations under the authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. §164.306(a)(1)-(4); 45 C.F.R. §164.308(1)(i); 45 C.F.R. §164.308(a)(1)(ii)(D), and 45 C.F.R. §164.530(b).

77.     A data breach, such as the one Defendant experienced, is considered a breach under the HIPAA rules because there is an access of PHI not permitted under the HIPAA Privacy Rule. A breach under the HIPAA Rules is defined as, "the acquisition, access, use, or disclosure of PHI in a manner not permitted under [the HIPAA Privacy Rule] which compromises the privacy of the PHI."[19]

78.     The Data Breach resulted from a combination of insufficiencies that Defendant failed to comply with safeguards maintained by HIPAA regulations.

79.     Furthermore, persons, including healthcare providers, that receive information from a confidential communication or record, as described above, "may not disclose the

---

[17] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

[18] 42 U.S.C. § 1301, *et seq.*

[19] *See* C.F.R. § 164.40.

information except to the extent that disclosure is consistent with the authorized purposes for which the information was first obtained."[20]

80.    Defendant's Data Breach and unauthorized disclosure of Plaintiff's and Class Members' Sensitive Information to malicious third parties violated Plaintiff's and Class Members' rights to privacy and confidentiality in their receipt of healthcare services and fell below the applicable standards for safeguarding the confidential Sensitive Information of Plaintiff and Class Members.

**F.  The Data Breach Resulted from ConnectOnCall's Failure to Properly Maintain and Safeguard its Systems and Data**

81.    ConnectOnCall breached its obligation to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data.

82.    Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

    a.  Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

    b.  Failing to adequately protect client's patients' Sensitive Information;

    c.  Failing to properly monitor its own data security systems for existing intrusions;

    d.  Failing to ensure that its vendors with access to its computer systems employed reasonable security procedures;

    e.  Failing to detect unauthorized ingress into its systems;

    f.  Failing to implement and monitor reasonable network segmentation to detect unauthorized travel within its systems, including to and from areas containing the most sensitive data;

---

[20] *Id.* § 159.002(c).

g.  Failing to detect unauthorized exfiltration of the most sensitive data on its system;

h.  Failing to train its employees in the proper handling of emails containing Sensitive Information and maintain adequate email security practices;

i.  Failing to ensure the confidentiality and integrity of electronic PHI it created, received, maintained, and/or transmitted, in violation of 45 C.F.R. §164.306(a)(1);

j.  Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. §164.312(a)(1);

k.  Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. §164.308(a)(1)(i);

l.  Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. §164.308(a)(1)(ii)(D);

m.  Failing to protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. §164.306(a)(3);

n.  Failing to ensure compliance with HIPAA security standard rules by its workforce in violation of 45 C.F.R. §164.306(a)(4);

o.  Failing to train all members of its workforce effectively on the policies and procedures regarding PHI as necessary and appropriate for the members of its workforces to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. §164.530(b);

p.  Failing to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals, as it had not encrypted the electronic PHI as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without the use of a confidential process or key"[21];

---

[21] 45 C.F.R. §164.304.

q. Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act, and

r. Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Sensitive Information.

83. Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Sensitive Information. Accordingly, as outlined below, Plaintiff and Class Members now face actual fraud and identity theft as well as increased risk of fraud and identity theft. In addition, Plaintiff and Class Members lost the benefit of the bargain they made with Defendant.

**G. Cyberattacks and Data Breaches Cause Disruption and Put Victims at an Increased Risk of Fraud and Identity Theft.**

84. Cyberattacks and data breaches at healthcare companies like Defendant are especially problematic because they can negatively impact the overall daily lives of individuals affected by the attack.

85. Researchers have found that among medical services providers that experience a data security incident, the death rate among patients increased in the months and years after the attack.[22]

86. Researchers have further found that at medical service providers that experienced a data security incident, the incident was associated with deterioration in timeliness and patient outcomes, generally.[23]

---

[22] *See* Nsikan Akpan, *Ransomware and Data Breaches Linked to Uptick in Fatal Heart Attacks,* PBS (Oct. 24, 2019), https://www.pbs.org/newshour/science/ransomware-and-other-data-breaches-linked-to-uptick-in-fatal-heart-attacks.

[23] *See* Sung J. Choi *et al.*, *Data Breach Remediation Efforts and Their Implications for Hospital Quality*, 54 Health Services Res. 971, 971-80 (2019), https://www.onlinelibrary.wiley.com/doi/full/10.1111/1475-6773.13203.

87.    The United States Government Accountability Office released a report in 2007 regarding data breaches in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[24]

88.    That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal personally identifiable information is to monetize it.

89.    They do this by selling the spoils of their cyberattacks on the black market to identify thieves who desire to extort and harass victims, take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate piece of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim.

90.    For example, armed with just a name and date of birth, a data thief can utilize a hacking technique called "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security Number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

91.    The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (and consider an extended fraud alert that lasts for 7 years if someone

---

[24] *See* GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, at 2 (2007), https://www.gao.gov/new.items/d07737.pdf ("GAO Report").

steal their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[25]

92.    Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

93.    Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information.

94.    In addition, thieves may obtain a job using the victim's Social Security Number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an issued victim's name.

95.    Moreover, theft of PII is also gravely serious because PII is an extremely valuable property right.[26]

96.    Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Sensitive Information has considerable market value.

---

[25] See IdentityTheft.gov/Steps, "https://www.identitytheft.gov/steps" (last visited Nov. 25, 2024).

[26] See, e.g., John T. Soma et al., Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich J.L. & Tech. 11, at 3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets." (citations omitted).

97.     Theft of PHI, in particular, is gravely serious. A thief may use customers' and patients' name or health insurance numbers "to see a doctor, get prescription drugs, buy medical devices, submit claims with [an] insurance provider, or get other medical care. If the thief's health information is mixed with yours, it could affect the medical care you're able to get or the health insurance benefits you're able to sue. It could also hurt your credit."[27]

98.     Drug manufacturers, medical device manufacturers, pharmacies, hospitals, and other healthcare service providers often purchase Sensitive Information on the black market for the purpose of target-marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

99.     There may additionally be a substantial time lag—measured in years—between when harm occurs and when it is discovered, and also between when Sensitive Information and/or financial information is stolen and when it is used.

100.    According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[28]

---

[27] *What to Know About Medical Identity Theft,* https://www.ftc.gov/articles/what-know-about-medical-identity-theft.

[28] *The GAO Report*, *supra* n.24.

101.     Sensitive Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

102.     There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

103.     Plaintiff and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

104.     PHI can sell for as much as $363 per record according to the Infosec Institute.[29]

105.     PII is particularly valuable because criminals can use it to target victims with frauds and scams. Once PII is stolen, fraudulent use of the information and damage to victims may continue for years.

106.     For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines.[30] Such fraud may go undetected until debt collection calls commence months, or even years, later.

107.     Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.

108.     Each of these fraudulent activities is difficult to detect.

---

[29] Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, Infosec (July 27, 2015), https://www.resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market (last visited Nov. 25, 2024).

[30] *Identity Theft and Your Social Security Number* (2021), https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Dec. 17, 2024).

109.    An individual may not know that his or her Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud.

110.    Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

111.    Moreover, it is not an easy task to change or cancel a stolen Social Security number.

112.    An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[31]

113.    This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at the cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[32]

114.    Medical information is especially valuable to identity thieves.

---

[31] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back* (Feb. 9, 2015), https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identtiy-theft.

[32] Tim Greene, *Anthem hack: Personal Data stolen sells for 10x price of stolen credit card numbers* (Feb 6. 2015), https://www.networkworld.com/article/935334/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

115.     According to account monitoring company LogDog, coveted Social Security numbers were selling on the dark web for just $1 in 2016 – the same as a Facebook account.[33] That pales in comparison with the asking price for medical data, which was selling for $50 and up.[34]

116.     Because of the value of its collected and stored data, the medical industry has experienced disproportionally higher numbers of data theft events than other industries.

117.     For this reason, Defendant knew or should have known about these dangers and strengthened its data systems and data security measures accordingly. Defendant was put on notice of the substantial and foreseeable risk of harm from a data breach, yet it failed to properly prepare for that risk.

**H. Plaintiff's and Class Members' Damages.**

118.     Plaintiff and Class Members have been damaged by the compromise of their Sensitive Information in the Data Breach.

119.     Plaintiff's and Class Members' Sensitive Information was compromised in the Data Breach and is now in the hands of cybercriminals who accessed the data Defendant held within its systems. The Sensitive Information exposed included the names, addresses, dates of birth, Social Security Numbers, financial account information, medical record numbers, health insurance, diagnosis and treatment information, and claims data of current and former healthcare patients whose data was stored by Defendant, as well as Defendant's current and former employees.[35]

---

[33] S*ee* Omri Toppol, *Email Security: How You Are Doing It Wrong & Paying Too Much* (Feb. 14, 2016), https://getlogdog.com/blogdog/email-security-you-are-doing-it-wrong/(last visited Nov. 25, 2024).

[34] Lisa Vaas, *Ransomware Attacks Paralyze, and Sometimes Crush, Hospitals,* Naked Security (Oct. 3, 2019) https://news.sophos.com/en-us/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/.

[35] *Notice of Data Breach*, *supra*, n.1.

120.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at a present, imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

121.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach, valuable time Plaintiff and Class Members otherwise would have spent on other activities, including but not limited to work and/or recreation.

122.    Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

123.    Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Sensitive Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

124.    Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

125.    Plaintiff and Class Members also suffered a loss of value of their Sensitive Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

126.    Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiff and Class Members who are current or former patients of Defendant's clients

overpaid for a service that was intended to be accompanied by adequate data security that complied with industry standards.

127.    Part of the price Plaintiff and Class Members paid to Defendant was intended to be used by Defendant to fund adequate data security practices to safeguard Plaintiff's and Class Members' Sensitive Information. As demonstrated by the Data Breach, Defendant failed to fund and provide adequate data security practices. Thus, Plaintiff and the Class Members who are current or former patients of Defendant's clients did not get what they paid for and agreed to.

128.    Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably spent to remedy or mitigate the effects of the Data Breach relating to:

    a.    Reviewing and monitoring sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

    b.    Purchasing credit monitoring and identity theft prevention;

    c.    Placing "freezes" and "alerts" with reporting agencies;

    d.    Spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

    e.    Contacting financial institutions and closing or modifying financial accounts; and,

    f.    Closely reviewing and monitoring their medical insurance accounts, bank accounts, and credit reports, as well as alerts for identity fraud including their SSNs, for unauthorized activity for years to come.

129.    Moreover, Plaintiff and Class Members have an interest in ensuring that their Sensitive Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but

not limited to, making sure that the storage of data or documents containing Sensitive Information is not accessible online or otherwise to unauthorized third parties.

130.    Further, as a result of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their Sensitive Information—which contains the most intimate details about a person's life, including what ailments they suffer, whether physical or mental—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

131.    As a direct and proximate result of Defendant's actions and omissions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

**REPRESENTATIVE PLAINTIFF ANTHONY JONES' EXPERIENCE**

132.    Plaintiff Anthony Jones was at times mentioned herein a patient of a healthcare provider who used ConnectOnCall's services in August 2019.

133.    As a condition of using his healthcare provider's services which utilized ConnectOnCall's platform, Plaintiff's sensitive personal and medical information was provided to and processed through Defendant's systems.

134.    This Sensitive Information was provided to Defendant with the reasonable expectation that Defendant would protect and secure this information from unauthorized access and disclosure.

135.    Plaintiff provided his Sensitive Information to Defendant with the reasonable expectation that Defendant would protect and secure this information from unauthorized access and disclosure.

136.    On or about December 11, 2024, Plaintiff received a Notice of Data Breach from Defendant, informing him that his Sensitive Information, including his name, phone number, date of birth, information related to his health conditions, treatments, and/or prescriptions was compromised as a result of the Data Breach.

137.    Plaintiff reasonably expected and understood that Defendant would take, at a minimum, industry standard precautions to protect, maintain, and safeguard his Sensitive Information from unauthorized users or disclosure, and would timely notify him of any data security incidents related to the same. Plaintiff would not have used Defendant's services had he known that Defendant would not take reasonable steps to safeguard his Sensitive Information.

138.    Plaintiff is very careful about sharing his sensitive PII and PHI. He has never knowingly transmitted unencrypted sensitive PII and PHI over the internet or any other unsecured source. Furthermore, Plaintiff stores any documents containing his sensitive information in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

139.    As a result of the Data Breach and at the recommendation of Defendant and its Notice, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing financial statements, monitoring his credit information, and changing passwords on his various accounts.

140.    Plaintiff has spent significant time responding to the Data Breach and will continue to spend valuable time he otherwise would have spent on other activities, including but not limited to work and/or recreation.

141.    Plaintiff Anthony Jones suffered actual injury from having his sensitive information exposed and/or stolen as a result of the Data Breach including, but not limited to: (a) entrusting

PII and PHI to Defendant that he would not have had Defendant disclosed it lacked data security practices adequate to safeguard its clients' patients' Sensitive Information; (b) damages to and diminution in the value of his Sensitive Information–a form of intangible property that he entrusted to Defendant as a condition of receiving healthcare services; (c) loss of his privacy; (d) continuous imminent and impending injury arising from the increased risk of financial, medical, and identity fraud and theft; and (e) time and expense of his mitigation efforts as a result of the Data Breach.

142.    Due to the Data Breach, Plaintiff anticipates spending considerable additional time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. This includes changing passwords, monitoring his medical history and health insurance information, and monitoring his other accounts for fraudulent activity.

143.    Plaintiff has already experienced a great increase in spam calls including pre-recordings, asking his to provide his personal financial information.

144.    In addition, knowing that unauthorized actors accessed and/or stole his PII and PHI, which may be used for identity theft, fraud, and related purposes, has caused Plaintiff Anthony Jones to experience feelings of anxiety, stress, and fear. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

145.    Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has experienced anxiety and increased concerns for the loss of his privacy, as well as anxiety over the impact of cybercriminals accessing and using his PII and PHI.

146.    Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his PII and PHI being placed in the hands of unauthorized third parties/criminals.

147.    Plaintiff Anthony Jones has a continuing interest in ensuring that his PII and PHI, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

148.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated.

149.    The Class that Plaintiff seeks to represent is defined as follows:

> All individuals residing in the United States whose Sensitive Information was compromised by the Data Breach, including all persons to whom Defendant sent a notice of the Data Breach (the "Class").

150.    The following people are excluded from the Class: (i)any judge or magistrate presiding over this action and members of their families; (ii) Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendant or its parent has a controlling interest, and their current or former officers and directors; (iii) persons who properly execute and file a timely request for exclusion from the Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) Plaintiff's counsel and Defendant's counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

151.    <u>Numerosity</u>: The exact number of members of the Class is unknown but, upon information and belief, it is estimated to number in the tens or hundreds of thousands at this time, and individual joinder in this case is impracticable. Members of the Class can be easily identified through Defendant's records and objective criteria permitting self-identification in response to notice, and notice can be provided through techniques similar to those customarily used in other data breach, consumer breach of contract, unlawful trade practices, and class action controversies.

152.   <u>Typicality</u>: Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff, and the members of the Class, sustained damages arising out of Defendant's Data Breach, wrongful conduct and misrepresentations, false statements, concealment, and unlawful practices, and Plaintiff and members of the Class sustained similar injuries and damages, as a result of Defendant's uniform illegal conduct.

153.   <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with, or are antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

154.   <u>Commonality and Predominance</u>: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a.   Whether Defendant violated the laws asserted herein, including statutory privacy laws;

    b.   Whether Defendant had a duty to use reasonable care to safeguard Plaintiff's and Class Members' Sensitive Information;

    c.   Whether Defendant breached the duty to use reasonable care to safeguard Plaintiff's and Class Members' Sensitive Information;

    d.   Whether Defendant breached its contractual promises to safeguard Plaintiff's and Class Members' Sensitive Information;

    e.   Whether Defendant knew or should have known about the inadequacies of its data security policies and system and the dangers associated with storing Sensitive Information;

    f.   Whether Defendant failed to use reasonable care and commercially reasonable methods to safeguard and protect Plaintiff's and Class Members' Sensitive Information from unauthorized release and disclosure;

g.  Whether the proper data security measures, policies, procedures, and protocols were in place and operational within Defendant's computer systems to safeguard and protect Plaintiff's and Class Members' Sensitive Information from unauthorized release and disclosure;

h.  Whether Defendant took reasonable measures to determine the extent of the Data Breach after it was discovered;

i.  Whether Defendant's method of informing Plaintiff and other members of the Class was unreasonable;

j.  Whether Defendant's conduct was likely to deceive the public;

k.  Whether Defendant is liable for negligence or gross negligence;

l.  Whether Defendant's conduct, practices, statements, and representations about the Data Breach of the Sensitive Information violated applicable state laws;

m.  Whether Plaintiff and Class Members were injured as a proximate cause or result of the Data Breach;

n.  Whether Plaintiff and members of the Class were damaged as a proximate cause of the Data Breach;

o.  Whether Defendant's practices and representations related to the Data Breach breached implied contracts with Plaintiff and members of the Class;

p.  What the proper measure of damages is; and

q.  Whether Plaintiff and members of the Class are entitled to restitutionary, injunctive, declaratory, or other relief.

155.  <u>Superiority</u>: This cause is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would

increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions ensured.

156.    A class action is superior to individual litigation because:

   a.  The amount of damages available to an individual plaintiff is insufficient to make litigation addressing Defendant's conduct economically feasible in the absence of the class action procedural device;

   b.  Individualized litigation would present a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system; and

   c.  The class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

157.    Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

   a.  Whether Defendant failed to timely and adequately notify the public of the Data Breach;

   b.  Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Sensitive Information;

   c.  Whether Defendant's security measures to protect its data systems were reasonable in light of best practices recommended by data security experts;

   d.  Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

   e.  Whether Defendant failed to take commercially reasonable steps to safeguard consumer Sensitive Information; and

  f. Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

158. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## CAUSES OF ACTION

## COUNT I

### NEGLIGENCE
### (*On Behalf of Plaintiff & the Class*)

159. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

160. Defendant required its clients' patients, including Plaintiff and Class Members, to submit their Sensitive Information to receive Defendant's services in connection with their healthcare.

161. By collecting and storing this data in its computer system and network, and sharing it and using it for commercial gain, Defendant owed a duty of care to use reasonable means to secure and safeguard its computer system—and Plaintiff's and Class Members' Sensitive Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

162. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure

that its systems and networks, the personnel responsible for them, and its information technology partners adequately protected the Sensitive Information.

163.    Plaintiff and the Class are a well-defined, foreseeable, and probable group of Defendant's clients' patients that Defendant was aware, or should have been aware, could be injured by inadequate data security measures.

164.    A large repository of highly valuable healthcare and personal information is a foreseeable target for cybercriminals looking to steal and profit from that sensitive information. Defendant knew or should have known that, given its repository of a host of Sensitive Information for thousands of clients' patients posed a significant risk of being targeted for a data breach. Thus, Defendant had a duty to reasonably safeguard Plaintiff's and Class Members' data by implementing reasonable data security measures to protect against data breaches. The foreseeable harm to Plaintiff and the Class of inadequate data security created a duty to act reasonably and safeguard the Sensitive Information.

165.    After all, PII and PHI are highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Sensitive Information of Plaintiff and Class Members. Thus, Defendant knew, or should have known, the importance of exercising reasonable care in handling the Sensitive Information entrusted to them.

166.    Defendant's duty of care to use reasonable security measures also arose as a result of the special relationship that existed between Defendant and its clients' patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendant was in a superior position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

167.     Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information."[36] Some or all of the medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

168.     In addition, Defendant has a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.[37]

169.     Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Sensitive Information.

170.     Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' Sensitive Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

   a.   Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Sensitive Information;

   b.   Failing to adequately monitor the security of its networks and systems;

   c.   Failing to have in place mitigation policies and procedures;

   d.   Allowing unauthorized access to Plaintiff's and Class Members' Sensitive Information;

---

[36] 45 C.F.R. §164.530(c)(1).

[37] *See* 15 U.S.C. §45.

e.   Failing to detect in a timely manner that Plaintiff's and Class Members' Sensitive Information had been compromised; and

f.   Failing to timely notify Plaintiff and Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

171.   Defendant breached its duty to exercise reasonable care in safeguarding and protecting Plaintiff's and the Class Members' Sensitive Information by failing to adopt, implement, and maintain adequate security measures to safeguard that information, despite known data breaches in the healthcare industry, and allowing unauthorized access to Plaintiff's and Class Members' Sensitive Information.

172.   The failure of Defendant to comply with industry standards and federal regulations evidences Defendant's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Sensitive Information.

173.   But for Defendant's wrongful and negligent breach of its duties to Plaintiff and Class Members, their Sensitive Information would not have been compromised, stolen, and viewed by unauthorized persons. Defendant's negligence was a direct and legal cause of the theft of the Sensitive Information of Plaintiff and Class Members and all resulting damages.

174.   It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' Sensitive Information would result in injury to Plaintiff and Class Members. Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry.

175.   It was therefore foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' Sensitive Information would result in one or more types of injuries to Plaintiff and Class Members.

176.    As a result of this misconduct by Defendant, the Sensitive Information of Plaintiff and Class Members was compromised, placing them at a greater risk of identity theft and of their Sensitive Information being disclosed to third parties without the consent of Plaintiff and the Class.

177.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

178.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.,* (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to Plaintiff and all Class Members.

## COUNT II

### NEGLIGENCE PER SE
### *(On Behalf of Plaintiff & the Class)*

179.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

180.    Plaintiff alleges this negligence *per se* theory as alternative to Count I.

181.    Pursuant to the laws set forth herein, including the FTC Act, HIPAA, the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C and the other sections identified above, Defendant was required by law to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiff's and Class Members' Sensitive Information.

182.    Pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Defendant has a duty to provide fair and adequate computer systems and data security practices to

safeguard Plaintiff's and Class Members' Sensitive Information. Specifically, this statute prohibits "unfair . . . practices in or affecting commerce," including (as interpreted and enforced by the FTC) the unfair practice of failing to use reasonable measures to protect confidential data.[38]

183.    Moreover, Plaintiff and Class Members' injuries are precisely the type of injuries that the FTCA guards against. After all, the FTC has pursued numerous enforcement actions against businesses that—because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices—caused the very same injuries that Defendant inflicted upon Plaintiff and Class Members.

184.    Pursuant to HIPAA, Defendant had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' Sensitive Information.  Defendant had a duty to use reasonable security measures to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information."[39] Some or all of the medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.[40]

185.    Pursuant to HIPAA, Defendant had a duty to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals, as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key."[41]

---

[38] 15 U.S.C. §45

[39] 45 C.F.R. §164.530(c)(1)

[40] *Id.*

[41] *See id.* §164.304.

186.    Plaintiff and Class Members are within the class of persons that the HIPAA was intended to protect. And the injuries that Defendant inflicted on Plaintiff and Class Members are precisely the harms that HIPAA guards against. After all, the Federal Health and Human Services' Office for Civil Rights ("OCR") has pursued enforcement actions against businesses which— because of their failure to employ reasonable data security measures for PHI— caused the very same injuries that Defendant inflicted upon Plaintiff and Class Members.

187.    Under the Health Information Technology for Economic and Clinical Health Act ("HITECH"), Defendant has a duty to promptly notify "without unreasonable delay and in no case later than 60 calendar days after the discovery of a breach" the respective covered entities and affected persons so that the entities and persons can take action to protect themselves.[42]

188.    Moreover, the HITECH states that, "[a] covered entity that accesses, maintains, retains, modifies, records, stores, destroys, or otherwise holds, uses, or discloses unsecured protected health information (as defined in subsection (h)(1)) shall, in the case of a breach of such information that is discovered by the covered entity, notify each individual whose unsecured protected health information has been, or is reasonably believed by the covered entity to have been, accessed, acquired, or disclosed as a result of such breach."[43]

189.    The HITECH further provides, "[a] business associate of a covered entity that accesses, maintains, retains, modifies, records, stores, destroys, or otherwise holds, uses, or discloses unsecured protected health information shall, following the discovery of a breach of such information, notify the covered entity of such breach. Such notice shall include the identification

---

[42] 42 U.S.C. §17932(d)(1).

[43] *Id.* §17932(a).

of each individual whose unsecured protected health information has been or is reasonably believed by the business associate to have been, accessed, acquired, or disclosed during such breach."[44]

190.    Defendant's duty to use reasonable care in protecting confidential data arose not only because of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII and PHI.

191.    Defendant owed Plaintiff and Class Members a duty to notify them within a reasonable time frame of any breach to their Sensitive Information. Defendant also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. This duty is necessary for Plaintiff and Class Members to take appropriate measures to protect their Sensitive Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps in an effort to mitigate the fallout of Defendant's Data Breach.

192.    Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from its inadequate security protocols. After all, Defendant actively sought and obtained the Sensitive Information of Plaintiff and Class Members.

193.    Defendant breached its duties to Plaintiff and Class Members under the FTCA and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Sensitive Information. And but for Defendant's negligence, Plaintiff and Class Members would not have been injured. The specific negligent acts and omissions committed by Defendant include, but are not limited to:

---

[44] *Id.* §17932(b).

a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Sensitive Information:

b.  Failing to comply with—and thus violating—HIPAA and its regulations;

c.  Failing to comply with—and thus violating—HITECH and its regulations;

d.  Failing to comply with—and thus violating—FTCA and its regulations;

e.  Failing to adequately monitor the security of its networks and systems;

f.  Failing to have in place mitigation policies and procedures;

g.  Allowing unauthorized access to Plaintiff's and Class Members' Sensitive Information;

h.  Failing to detect in a timely manner that Plaintiff's and Class Members' Sensitive Information had been compromised; and

i.  Failing to timely notify Plaintiff and Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

194.    Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

195.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

196.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Sensitive Information.

197.    Simply put, Defendant's negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injuries-in-fact and damages. These injuries include, but are not

limited to, the theft of their Sensitive Information by criminals, improper disclosure of their Sensitive Information, lost benefit of their bargain, lost value of their Sensitive Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence. Moreover, injuries-in-fact and damages are ongoing, imminent, and immediate.

198.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

199.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.,* (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to Plaintiff and all Class Members.

## COUNT III

### INVASION OF PRIVACY
### *(On Behalf of Plaintiff & the Class)*

200.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

201.    Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

202.    Defendant owed a duty to its clients' patients, including Plaintiff and the Class, to keep this information confidential.

203.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class Members' PII and PHI is highly offensive to a reasonable person.

204.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant as part of receiving healthcare services, but they did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

205.    The Data Breach constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

206.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

207.    Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

208.    Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

209.    As a proximate result of Defendant's acts and omissions, the private and sensitive PII and PHI of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

210.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class

because their PII and PHI are still maintained by Defendant with its inadequate cybersecurity system and policies.

211.    Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII and PHI of Plaintiff and the Class.

212.    In addition to injunctive relief, Plaintiff, on behalf of himself and the other members of the Class, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of him credit history for identity theft and fraud, plus prejudgment interest and costs.

## COUNT IV

### BREACH OF IMPLIED CONTRACT
### *(On Behalf of Plaintiff & the Class)*

213.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

214.    Defendant required Plaintiff and Class Members to provide and entrust their Sensitive Information as a condition of obtaining medical services from Defendant's clients.

215.    Plaintiff and Class Members paid money to Defendant, directly and/or indirectly, in exchange for goods, services, as well as Defendant's promise to protect their Sensitive Information from unauthorized disclosure.

216.    Defendant promised to comply with legal and industry standards, including HIPAA, and to make sure that Plaintiff's and Class Members' Sensitive Information would remain protected.

217.    Implicit in the agreement between Defendant and Plaintiff and Class Members was the obligation that both parties would maintain the Sensitive Information confidentially and securely.

218.    Defendant had an implied duty of good faith to ensure that the Sensitive Information of Plaintiff and Class Members in its possession was used only as authorized, such as to provide medical treatment and other medical benefits from Defendant.

219.    Defendant had an implied duty to protect the Sensitive Information of Plaintiff and Class Members from unauthorized disclosure or uses.

220.    Additionally, Defendant implicitly promised to retain this Sensitive Information only under conditions that kept such information secure and confidential.

221.    Through its course of conduct, Defendant, Plaintiff, and Class Members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' Sensitive Information.

222.    Defendant solicited and invited Plaintiff and Class Members to provide their Sensitive Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Sensitive Information to Defendant.

223.    Plaintiff and Class Members fully performed their obligations under the implied contract with Defendant. Defendant did not. Plaintiff and Class Members would not have provided their confidential Sensitive Information to Defendant in the absence of their implied contracts with Defendant and would have instead retained the opportunity to control their Sensitive Information for uses other than medical treatment and obtaining other medical services from Defendant.

224.    Defendant breached the implied contracts with Plaintiff and Class Members by failing to safeguard and protect Plaintiff's and Class Members' Sensitive Information; failing to

provide timely and accurate notice to Plaintiff and Class Members that their Sensitive Information was compromised as a result of the Data Breach; and violating industry standards as well as legal obligations that are necessarily incorporated into implied contracts between Plaintiff, Class Members, and Defendant.

225.    Defendant further breached the implied contracts with Plaintiff and Class Members by failing to comply with its promise to abide by HIPAA.

226.    Defendant further breached the implied contracts with Plaintiff and Class Members by failing to ensure the confidentiality and integrity of electronic protected health information Defendant created, received, maintained, and transmitted in violation of 45 C.F.R. §164.306(a)(1).

227.    Defendant further breached the implied contracts with Plaintiff and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. §164.308(a)(1).

228.    Defendant further breached the implied contracts with Plaintiff and Class Members by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 C.F.R. § 164.306(a)(2).

229.    Defendant's failures to meet these promises constitute breaches of the implied contracts.

230.    Furthermore, the failure to meet its confidentiality and privacy obligations resulted in Defendant providing goods and services to Plaintiff and Class Members that were of a diminished value.

231.    Defendant's acts and omissions have materially affected the intended purpose of the implied contracts requiring Plaintiff and Class Members to provide their Sensitive Information in exchange for medical treatment and services.

48

232. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and Class Members have suffered (and will continue to suffer) (a) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (b) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (c) loss of the confidentiality of the stolen confidential data; (d) the possibility of an illegal sale of the compromised data on the dark web; (e) lost work time; and (f) other economic and non- economic harm.

233. As a direct and proximate result of Defendant's above-described breach of contract, Plaintiff and Class Members are entitled to recover actual, consequential, and nominal damages.

## COUNT V

### UNJUST ENRICHMENT
### *(On Behalf of Plaintiff & the Class)*

234. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

235. This claim is pleaded solely in the alternative to Plaintiff's breach of implied contract claim.

236. Plaintiff and Class Members conferred a monetary benefit on Defendant by paying money for healthcare services that relied on Defendant to render certain services, a portion of which was intended to have been used by Defendant for data security measures to secure Plaintiff and Class Members' Sensitive Information. Plaintiff and Class Members further conferred a benefit on Defendant by entrusting their Sensitive Information to Defendant from which Defendant derived profits.

237. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff and Class Members' Sensitive Information. Instead

of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide adequate security.

238.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

239.    Defendant acquired the monetary benefit, PII, and PHI through inequitable means in that Defendant failed to disclose the inadequate security practices, as described herein, and failed to maintain adequate data security.

240.    If Plaintiff and Class Members knew that Defendant had not secured their Sensitive Information, they would not have agreed to give their money—or disclosed their data— to Defendant.

241.    Plaintiff and Class Members have no adequate remedy at law.

242.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered—and will continue to suffer—a host of injuries, including but not limited to: (1) actual identity theft; (2) the loss of the opportunity to determine how their Sensitive Information is used; (3) the compromise, publication, and/or theft of their Sensitive Information; (4) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Sensitive Information; (5) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual

and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (6) the continued risk to their Sensitive Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Sensitive Information in its possession; and (7) future expenditures of time, effort, and money that will be spent trying to prevent, detect, contest, and repair the impact of Defendant's Data Breach.

243.    The benefits that Defendant derived from Plaintiff and Class Members rightly belong to Plaintiff and Class Members. It would be inequitable under unjust enrichment principles for Defendant to be permitted to retain any of the profit or other benefits it derived from the unfair and unconscionable methods, acts, and data security practices alleged in this Complaint.

244.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds it received as a result of its conduct and the Data Breach alleged herein.

## COUNT VI

### BREACH OF FIDUCIARY DUTY
### *(On Behalf of Plaintiff & the Class)*

245.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

246.    In light of the special relationship between Defendant and Plaintiff and Class Members, whereby Defendant became guardian of Plaintiff's and Class Members' Sensitive Information, Defendant became a fiduciary by its undertaking and guardianship of the Sensitive Information, to act primarily for Plaintiff and Class Members, (1) for the safeguarding of Plaintiff's and Class Members' Sensitive Information; (2) to timely notify Plaintiff and Class Members of a

Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

247.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of its relationship with its current and former third-party and employees to keep secure their Sensitive Information.

248.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to diligently discover, investigate, and give detailed notice of the Data Breach to Plaintiff and the Class in a reasonable and practicable period of time.

249.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiff's and Class Members' Sensitive Information.

250.    Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to timely notify and/or warn Plaintiff and Class Members of the Data Breach.

251.    Defendant breached its fiduciary duties to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' Sensitive Information.

252.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Sensitive Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Sensitive Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their

Sensitive Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Sensitive Information in their continued possession; (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (vii) the diminished value of Defendant's services they received.

253.     As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## COUNT VII

### BREACH OF THIRD PARTY BENEFICIARY CONTRACT
### *(On Behalf of Plaintiff & the Class)*

254.     Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

255.     On information and belief, Defendant entered into contracts to provide services to its clients, which services included on-call answering solutions for healthcare providers to manage after-hour calls and patient communication and care, to safeguard the Sensitive Information that was to be provided to it.

256.     On information and belief, these contracts are virtually identical and were made expressly for the benefit of Plaintiff and Class Members, as it was their Sensitive Information that Defendant agreed to receive and protect through its services. Thus, the benefit of collection and protection of the Sensitive Information belonging to Plaintiff and Class Members was the direct and primary objective of the contracting parties.

53

257.    Defendant knew that if it were to breach these contracts with its clients, the clients' patients, including Plaintiff and Class Members, would be harmed.

258.    Defendant breached its contracts with its clients—whose patients, including Plaintiff and Class Members, were affected by this Data Breach—when it failed to use reasonable data security measures that could have prevented the Data Breach, and when it failed to timely notify Plaintiff and Class Members regarding the breach.

259.    As foreseen, Plaintiff and Class Members were harmed by Defendant's failure to use reasonable data security measures to store the Sensitive Information Plaintiff and Class Members provided to their respective health plans or other entities who in turn provided that information to Defendant, and the failure to timely notify Plaintiff and Class Members, including but not limited to, the continuous and substantial risk of harm through the loss of their Sensitive Information.

260.    Accordingly, Plaintiff and Class Members are entitled to damages in an amount to be determined at trial, including actual, consequential, and nominal damages, along with costs and attorneys' fees incurred in this action.

## COUNT VIII

### BAILMENT
### *(On Behalf of Plaintiff & the Class)*

261.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

262.    Plaintiffs and Class Members provided Sensitive Information to Defendants— either directly or through healthcare providers and their business associates—which Defendants were under a duty to keep private and confidential.

263.    Plaintiffs' and Class Members' Sensitive Information is personal property, and it was conveyed to Defendants for the certain purpose of keeping the information private and confidential.

264.    Plaintiffs' and Class Members' Sensitive Information has value and is highly prized by hackers and criminals.  Defendants were aware of the risks it took when accepting the Sensitive Information for safeguarding and assumed the risk voluntarily.

265.    Once Defendants accepted Plaintiffs' and Class Members' Sensitive Information, it was in the exclusive possession of that information, and neither Plaintiffs nor Class Members could control that information once it was within the possession, custody, and control of Defendants.

266.    Defendants did not safeguard Plaintiffs' or Class Members' Sensitive Information when it failed to adopt and enforce adequate security safeguards to prevent a known risk of a cyberattack.

267.    Defendants' failure to safeguard Plaintiffs' and Class Members' Sensitive Information resulted in that information being accessed or obtained by third-party cybercriminals.

268.    As a result of Defendants' failure to keep Plaintiffs' and Class Members' Sensitive Information secure, Plaintiffs and Class Members suffered injury, for which compensation—including nominal damages and compensatory damages—is appropriate.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Anthony Jones, on behalf of himself and all persons similarly situated, prays for judgment in him favor and against Defendant., and respectfully requests that this Honorable Court enter an order:

A.    certifying this action as a Class action and appointing Plaintiff as Class Representatives and him counsel as Class Counsel;

B.     granting equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Sensitive Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

C.     granting equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Sensitive Information compromised during the Data Breach;

D.     granting equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

E.     requiring Defendant to pay for not less than three years of credit monitoring services for Plaintiff and the Class;

F.     awarding actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

G.     awarding punitive damages, as allowable by law;

H.     awarding attorneys' fees and costs under the common fund doctrine, and any other applicable law;

I.     awarding costs and any other expense, including expert witness fees, incurred by Plaintiff in connection with this action;

J.     awarding pre- and post-judgment interest on any amounts awarded; and

K.     all such other and further relief as this court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: December 23, 2024                    Respectfully submitted,

                                            /s/ David S. Almeida
                                            **ALMEIDA LAW GROUP LLC**
                                            David S. Almeida (NY Bar No. 3056520)
                                            Elena A. Belov (NY Bar No. 4080891)
                                            849 W. Webster Ave.
                                            Chicago, Illinois, 60614
                                            Tel.: (708) 437-6476
                                            david@almeidalawgroup.com
                                            elena@almeidalawgroup.com

                                            *Attorneys for Plaintiff and the Putative Class*